IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. CR-16-207-D |
| JONATHAN MEDINA-VALENZUELA, | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR REVOCATION
OF RELEASE ORDER**

On December 6, 2016, the Court held a detention hearing, pursuant to 18 U.S.C. § 3142(f), as a result of the government's Notice of Appeal [Doc. No. 23]. The government moves for revocation of a magistrate judge's order for the release of Defendant Jonathan Medina-Valenzuela pending trial. The government appeared through counsel, Assistant United States Attorney Nicholas Patterson; Defendant appeared personally and through counsel, Bill Zuhdi, and with a Spanish-language interpreter, Rita Lyons.

Upon the government's request pursuant to 18 U.S.C. § 3145(a)(1), the Court must conduct a *de novo* review of the release order issued by United States Magistrate Judge Jan M. Adler in the Southern District of California on October 27, 2016, and must make an independent determination of whether Defendant should be detained or released on conditions pending trial. To that end, the Court has reviewed the transcript of the detention hearing held on October 27, 2016, and an FBI report regarding an interview of Defendant conducted after his arrest on October 23, 2016. *See* Notice of Appeal, Ex. 1 & Ex. 2 [Doc.

Nos. 24-1 & 24-2]. The Court has considered the testimony of Defendant's witness, Rafaela Gonzalez, and evidence proffered at the December 6 hearing consisting of a letter from his most recent employer. The Court has also considered the case record, the pleadings, and the written and oral arguments of counsel.

To obtain the detention of Defendant, the government bears the burden to prove "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence." *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) (citations omitted). The clear-and-convincing-evidence standard is met if the factfinder has "an abiding conviction" that the "factual contentions are highly probable." *See Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (internal quotation omitted). Pursuant to 18 U.S.C. § 3142(f), the Federal Rules of Evidence "do not apply to the presentation and consideration of information at the hearing."

Where, as here, a defendant is charged with committing an offense under the Controlled Substances Act, 21 U.S.C. § 801 *et seq*., for which the maximum term of imprisonment is 10 years or more, a rebuttable presumption arises under 18 U.S.C. § 3142(e)(3), that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community if the court finds probable cause to

believe that the defendant committed the offense charged. If the presumption arises, the defendant bears the burden to produce some evidence to overcome it, and even where it is overcome, the presumption remains a factor in the detention decision. *See United States v. Stricklin*, 932 F.2d 1353, 1354-55 (10th Cir. 1991). The burden of persuasion remains at all times with the government. *Id*. Pursuant to 18 U.S.C. § 3142(g), the following factors must be considered:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a controlled substance . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including–
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

As pertinent to the application of the § 3142(g) factors, the Court makes the following findings of fact:

1.      Defendant is a 30-year-old citizen of Mexico who has been a lawful permanent resident of the United States since 2013. Defendant grew up in Mexico but has lived in the United States for the past three years.

2.      Defendant currently has family members residing in both Mexico and the United States, specifically in California and Arizona. His mother, older brother, older sister, and 11-year-old son live in Mexico; all are citizens of Mexico, except his son is a United States citizen. Defendant has extended family in Mexico and the United States. He has numerous aunts, uncles, and cousins living in southern and central California and Phoenix, Arizona. He also has a grandmother who resides in Phoenix. Defendant's father is deceased. His witness, Ms. Gonzalez, is a maternal aunt who resides in Phoenix and has been a citizen of the United States for 25 years.

3.      Defendant's mother owns houses in Phoenix, Arizona, and Tijuana, Mexico. She purchased the house in Phoenix with life insurance proceeds following the death of Defendant's father five years ago. The residence is fully paid for and worth about $150,000. Her house in Tijuana is the family home in which Defendant's parents lived at the time of his father's death.

4.      During 2015, Defendant crossed the border between the United States and Mexico more than 30 times, sometimes remaining in Mexico for extended periods of time. During 2016, while purportedly living in Arizona, Defendant crossed several times through ports of entry in California; he was arrested at the Otay Mesa Port of Entry in San Diego.

Defendant's family members also travel frequently between the two countries for family visits and vacations. His mother was present at the hearing to support him.

5. In the past year, Defendant has derived income from a two-month period of employment in Arizona. His employer was pleased with his work, and is willing to re-employ him if he is released. Defendant has indicated he was previously employed in California, but he has not filed any federal income tax returns.

6. Defendant has no known interests in or ties to Oklahoma other than those related to this case.

7. Defendant was arrested in California on October 23, 2016, under a warrant issued upon a criminal complaint in this judicial district, while attempting to enter the United States from Mexico. In an interview by investigators shortly after his arrest, Defendant stated he had been recruited in California to work for a drug trafficking organization operating from Oklahoma. He admitting traveling to Oklahoma, staying in an apartment here in which he saw approximately two pounds of methamphetamine, driving a truck provided by the organization, and using it to deliver drugs in June 2016. He did not deny delivering approximately one-half pound of methamphetamine to an undercover officer.

8. The defendant is now facing 17 charges set out in an Indictment returned by the grand jury on November 1, 2016. The charges include conspiracy to possess with intent to distribute and to distribute methamphetamine, distribution of methamphetamine, conspiracy to commit money laundering, and 14 counts of money laundering. As a result of

these charges, the defendant is facing potential punishments that include maximum prison terms of 20 years, 40 years, and life imprisonment, and mandatory minimum prison terms of 5 years and 10 years.

9. Based on the grand jury's findings shown by the Indictment,[1] there is probable cause to believe that Defendant conspired with others to distribute a sizeable amount of methamphetamine and to transmit drug proceeds through purchases of money orders and the use of a funnel account in Oklahoma City. As part of the alleged drug trafficking conspiracy, Defendant made deliveries of methamphetamine to contacts in Oklahoma.

10. A law enforcement investigation conducted over a period of more than one year has produced evidence from surveillance, undercover activities, and other investigative techniques that Defendant has traveled between California, Mexico, and Oklahoma, working and delivering drugs for a drug trafficking organization. According to the criminal complaint, the evidence includes audio and video recordings of the drug transaction with which Defendant is charged in Count 7 of the Indictment. The evidence obtained during the government's investigation of the alleged crimes, including an investigation of financial records by the Internal Revenue Service, along with Defendant's own statements purportedly admitting participation in some of the alleged criminal conduct, establish that there is a substantial weight of evidence against Defendant.

---

[1] *See Stricklin*, 932 F.2d at 1355 (indictment "was sufficient to establish a finding of probable cause that [defendant] had committed the federal drug offense" charged); *see also United States v. Pina-Aboite*, 97 F. App'x 832, 835 (10th Cir. 2004); *United States v. Zaghmot*, No. 00-1348, 2000 WL 1678396, *1 (10th Cir. Nov. 8, 2000) ("An indictment constitutes a determination of probable cause.").

11.     Defendant has no prior felony convictions, and no history of substance abuse.

12.     If the charges against Defendant in this case are proven, his immigration status will be affected, and he would be subject to removal from the United States.

The foregoing findings establish that Defendant is accused of serious felony offenses, and the evidence against him is substantial. Defendant has produced sufficient evidence to rebut the statutory presumption in favor of detention. But in view of the mandatory minimum and severe maximum prison sentences associated with the charges of the Indictment, the presumption remains a factor that weighs heavily against Defendant's release. Defendant has significant ties outside the United States, and in fact, all of his closely related family members – mother, siblings, and son – reside in Mexico. His only personal ties to the United States are through extended family members. Although Defendant has stable employment available in Arizona, his two-month job history from a three-year period of residence in the United States is not significant. Defendant's frequent travel and numerous trips across the border between the United States and Mexico demonstrate the ease with which Defendant can move outside federal jurisdiction and remain there. Significantly, despite the seemingly stronger tie to Arizona – where his mother has a house, his closest aunt and grandmother live, and he reportedly worked – Defendant's most recent border crossing occurred in California. If convicted, Defendant will assuredly face the loss of his lawful permanent resident status, removal from the United States, and deportation to Mexico. These findings establish Defendant is an extreme flight risk.

Further, substantial evidence of Defendant's involvement in trafficking large quantities of methamphetamine in Oklahoma and his money laundering activities here – combined with his lack of other substantial means of financial support – establish a high probability that Defendant presents a continuing threat to the safety of the community. Therefore, all of these findings, tied to the factors set forth in 18 U.S.C. § 3142(g), support the conclusion that detention is appropriate and necessary in this case.[2]

For the foregoing reasons, the Court concludes that the government has met its burden of proof, by a preponderance of the evidence, that Defendant poses a serious flight risk if released, and by clear and convincing evidence, that Defendant poses a serious risk of danger to the community if released. The Court further concludes that no condition or combination of conditions will reasonably assure the appearance of Defendant as required for further proceedings in this case or the safety of the community. Therefore, the government's motion for revocation of Judge Adler's release order is granted, and Defendant shall continue to be detained pending trial.

IT IS THEREFORE ORDERED that Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correctional facility separate, to the extent practicable, from persons awaiting or serving sentences or being held

---

[2] The Court notes that while detention is required upon a finding that the defendant is a flight risk <u>and</u> he is a danger to the community, a risk of flight is sufficient, by itself, to justify pretrial detention. *See, e.g.*, *United States v. Smith*, 647 F. App'x 863, 865 (10th Cir. 2016). Here, however, the fact that "the charged crime involves a copious amount of methamphetamine" supports a finding of a danger to the community. *See United States v. Villapudua-Quintero*, 308 F. App'x 272, 273 (10th Cir. 2009).

in custody pending appeal. Defendant shall be afforded the reasonable opportunity for private consultations with counsel. On order of a federal court or on request of an attorney for the government, the person in charge of the correctional facility shall deliver Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED this 8th day of December, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE